UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 04-80521-CIV-MARRA/JOHNSON

SEAN PENDLEBURY and LAUREL
OVERTON, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

v.

STARBUCKS COFFEE COMPANY,
a foreign corporation, qualified to do
business in Florida as STARBUCKS
CORPORATION,

    Defendant.
_____/

**OPINION AND ORDER**

    THIS CAUSE is before the Court on Plaintiffs' Motion for Partial Summary Judgment on Defendant's Claimed Exemptions as to Store Managers in Defendant's Downtown New York City Region (DE 330), Plaintiffs' Motion for Judicial Estoppel and to Strike (DE 413), and Defendant's Motion to Deny Plaintiffs' Motion for Summary Judgment or for Other Relief Pursuant to Fed. R. Civ. P. 56(f) (DE 379). The motions are now fully briefed and are ripe for review. The Court has carefully considered the motions and is otherwise fully advised in the premises.

**Background**

    On June 7, 2004, Plaintiffs Sean Pendlebury and Laurel Overton filed the instant action against Defendant Starbucks Coffee Company ("Defendant"), seeking recovery of unpaid

overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, on behalf of themselves and all others similarly situated. (DE 1.) The case is proceeding as a collective action, and the Court denied Defendant's motion to decertify the class on September 21, 2007. (DE 451.) The crux of Pendlebury and Overton's argument is that Defendant's "store managers" are not exempt from the FLSA's coverage as "executives" or "administrators" because they do not have "management" as their primary duty. *See* 29 U.S.C. § 213.

The current motion for summary judgment does not implicate the entire class. Instead, this motion is only applicable to a subclass of Defendant's former store managers who worked in the New York City region ("Plaintiffs"). These Plaintiffs seek summary judgment primarily based on representations Defendant made in a brief filed with the National Labor Relations Board ("NLRB") in the matter of *Industrial Workers of the World, Industrial Union 660 v. Starbucks Corporation*, No. 2-RC-22852. Plaintiffs claim that these representations demonstrate, as a matter of law, that the executive and administrative exemptions do not apply. Defendant responds that these representations are of limited evidentiary value.

**Standard of Review**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this

regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

**Judicial Estoppel**

Plaintiffs claim that Defendant is attempting "to deny and contest the positions it took before the NLRB, and on which the NLRB relied and accepted in granting the relief Defendant sought." (Pl. Mot. Aug 13. 2007 3.) As such, Plaintiffs ask the Court to judicially estop Defendant from taking positions inconsistent with those taken in the brief Defendant submitted to the NLRB. (*See* Pl. Ex. 1.) Defendant responds that it is not taking positions in this proceeding that are inconsistent with those before the NLRB and thus judicial estoppel should not apply.

Long ago, the Supreme Court defined judicial estoppel as follows: "It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). The rule is intended to prevent a party "from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). The doctrine is designed to protect the integrity of the judicial process by preventing parties from changing positions as circumstances change. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). While the Supreme Court has recognized that judicial estoppel is not reducible to a rigid test, the Supreme Court considers three flexible factors when applying the doctrine: 1.) a party's later position must be "clearly inconsistent" with its earlier position; 2.) a court must have accepted the party's earlier position so that acceptance of the second position would create the perception that one court or the other was misled; and 3.) a

party will derive an unfair advantage from the opposing party if not estopped.  *New Hampshire*, 532 U.S. 750-51.

The parties devote the entirety of their briefs to these three factors.  However, the Eleventh Circuit requires courts to apply two additional factors: first, the allegedly inconsistent positions must have been made under oath; and second, the inconsistencies must have been made with the intent to "make a mockery of the judicial system."  *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002).[1]  Plaintiffs have failed to demonstrate that any of Defendant's statements were made under oath, sworn under penalty of perjury.  Likewise, Plaintiffs have not argued (nor offered any evidentiary support) that Defendant has taken inconsistent positions with an intent to make a mockery of this Court or the federal judiciary.  Since Plaintiffs have not complied with these requirements, Defendant will not be judicially estopped from taking any positions contrary to those in the NLRB brief.[2]

**Executive Exemption**

The central dispute in this case is whether store managers are guaranteed overtime wages when they work more than forty hours per week or whether they are exempted from FLSA's coverage under the "executive" or "administrative" exemptions.  29 U.S.C. §§ 207, 213(a)(1).

Department of Labor regulations define an employee as "employed in a bona fide executive capacity" when all of the following are met:

---

[1] The *Burnes* court held that these "two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions referenced above, and provide courts with sufficient flexibility."  *Burnes*, 291 F.3d at 1285-86.

[2] Even if Plaintiffs had addressed these additional requirements, the Court could not conclude, as a matter of law, that the positions taken by Defendant before the NLRB are "clearly inconsistent" with those positions taken in this case. .

(1) The employee is compensated on a "salary basis" of at least $455 per week;

(2) The employee's "primary duty is management of the enterprise in which the employee is employed";

(3) The employee regularly directs the work of two or more other employees; and

(4) The employee has the authority to hire and fire employees or the employee's recommendations with respect to hiring and firing are given "particular weight."

29 C.F.R. § 541.100(a).[3]  Plaintiffs do not dispute that the managers were paid more than $455 per week under the "salary basis" test. (Pl. Mot. 16 n.18.) Further, Plaintiffs do not maintain that store managers did not "regularly direct" the work of two or more other employees.[4]  Thus, the Court need only address the remaining two factors.

Management as Primary Duty

The Department of Labor regulations[5] provide a lengthy list of activities that generally connote "management":

---

[3] The Department of Labor regulations were amended in August 2004. Prior to that time, the regulations only listed the first three factors listed here. 29 C.F.R. § 541.1(f) (2004). For all conduct prior to August 2004, the Court need only address the first three factors. *See Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1299 (S.D. Fla. 2006); *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1322 n.5 (S.D. Fla. 2005).

[4] Plaintiffs state in passing that "when it comes to 'supervising' or 'directing' other employees during day-to-day operations, store managers actually do very little of it." (Pl. Mot. 21.) This statement, however, is contradicted by the assertion of Jeffrey Peters, who stated that he observed Plaintiff Ronald Mazzarino supervise all the employees in his store on several occasions. (Peters Decl. ¶ 9.)

[5] The FLSA explicitly authorizes the Department of Labor to issue regulations defining the executive and administrative exemptions to the statute. *See* 29 U.S.C. § 213(a). The Court must give such regulations "controlling weight" unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Relying on Defendant's brief presented before the NLRB panel and on the declarations of two former managers, Plaintiffs provide a laundry list of "managerial duties" for which they were not responsible: setting wage rates, authorizing overtime, determining store hours, maintaining sales records, handling employee complaints, planning sales, determining the materials or merchandise to be purchased and sold, planning the budget, advertising, making promotion decisions, terminating employees, designing stores, managing real estate matters, and paying bills associated with store operations.  (Pl. Mot. 18-19.)

In response, Defendant has provided the declaration of Jeffrey Peters, a regional director and former district manager for Defendant in the New York City region.[6]  Peters has stated that "day-to-day management of each store was the responsibility of the store manager."  (Peters Decl. ¶ 3.)  In his declaration, Peters stated that store managers decided

---

[6]While Peters' declaration focuses mainly on the assertions made by Ronald Mazzarino, Plaintiffs have asserted that the "stores in the Downtown New York City Region (the "Region") are nearly identical in every material way," and that the job descriptions of store managers are the same for "every store in the Region."  (Pl. Stmt. Mat. Fact ¶¶ 1, 2.)

7

>which applicants to interview; whom to hire as baristas; who would train new hires; when and how to coach partners (employees) on the sales floor; the rating given to his subordinate partners on their performance evaluations; whom to develop for promotion and the content of the partner development plan; whom to recommend for promotion; when to impose discipline and the type of discipline imposed; when to recommend discharge; how to schedule the partners in the store; the quantity of various products and supplies that would be ordered by the store; what goals to set for partners in the store; and how to lead and motivate the partners in the store.

(Peters Decl. ¶ 5.) Peters further explained that the store manager's "most important task" was not acting as a barista but rather to manage store employees and store operations,[7] enforce company policies and standards, and "analyzing store data." (Peters Decl. ¶ 7.) Managers were also responsible for completing performance evaluations every six months, addressing customer and employee grievances, allocating work assignments within the store. (Peters Decl. ¶¶ 15, 18-19.) Thus, at the outset, the Court finds that Plaintiffs have not presented uncontroverted evidence of a store manager's duties. Based on the evidence presented by the parties, the Court cannot conclude as a matter of law what the exact duties of a store manager are, let alone conclude as a matter of law that those duties are or are not managerial. The Court is faced with an issue of fact to be decided at trial, precluding summary judgment.

Nevertheless, Plaintiffs concede that store managers do engage in some "management" duties. (*See, e.g.,* Pl. Mot. 18.) The Court must still consider whether such duties were the "primary duties" of the store managers. The regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs," which is based on an examination of the totality of the circumstances in a particular case. 29 C.F.R. § 541.700(a).

---

[7]"Ensuring that company policies are carried out constitutes the 'very essence of supervisory work.'" *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982).

Specifically, the regulations direct the Court to consider (1) the "relative importance" of the employees exempt and non-exempt duties, (2) the frequency with which employees exercise discretion; (3) the employee's freedom from direct supervision, and (4) the relationship of the employee's salary to the wages paid to non-exempt employees. *Id.*

The amount of time an employee spends on managerial work is not dispositive of whether he or she is an exempt employee. § 541.700(b).[8]  Many other courts have held that managers of retail establishments are exempt, "notwithstanding the fact that they spent the majority of their time performing non-exempt tasks." *Poseley v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1302-03 (S.D. Fla. 2006) (collecting cases).

Plaintiffs claim that "store managers are 'glorified baristas,' plain and simple." (Pl. Mot. 18.)  Defendant challenges this assertion, claiming that store managers fit within the narrowly-construed executive exemption.  The Court must consider all of the factors listed above to determine whether Plaintiffs' primary duties were managerial.

**Relative Importance of Exempt Duties**

In evaluating this factor, the Court must measure the "significance of the managerial tasks to the success of the facility." *Haines v. Southern Retailers, Inc.*, 939 F. Supp. 441, 450 (E.D. Va. 1996).  The person "in charge" of a store is generally considered to have management as a primary duty, even if that person spends more aggregate time performing non-exempt duties and "makes few significant decisions." *Donovan v. Burger King Corp.*, 672 F.2d 221, 227 (1st Cir.

---

[8]In this case, it is not clear whether Plaintiffs spent more or less than 50% of their time on management tasks.  *Compare* Mazzarino Decl. ¶ 9 ("Only ten to twenty percent (10-20%) of my time was devoted to management duties.") *with* Peters Decl. ¶ 8 ("During the time I was in Mazzarino's store and could observe him, he spent more than half of his time attending to these types of duties.").

1982); *see also Horne v. Crown Central Petroleum, Inc.*, 775 F. Supp. 189, 191 (D.S.C. 1991) ("The [employees] merely rowed the boat; [the manager] charted and steered its course."). Nevertheless, merely having the title "manager" is not talismanic, and the Court must still engage in a fact-specific inquiry to determine whether the "manager's" most critical duties to the enterprise are her exempt managerial duties. *Rodriguez v. Farm Stores Grocery, Inc.*, Nos. 06-13186 & 06-13303, 2008 WL 215817 at *3 (11th Cir. Jan. 28, 2008) ("When it comes to deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details.").

Plaintiffs state boldly that all of the store managers' managerial duties "pale in importance to the store managers' time spent serving as a barista – making coffee, ringing up sales, cleaning the bathroom, etc." (Pl. Mot. 20.)  In support of this assertion, Plaintiffs rely on an identical declaration from two former store managers, Lezli Parker and Ronald Mazzarino, which reads, in pertinent part:

> Any "management duties" I performed were relatively unimportant in comparison to the non-exempt barista duties I performed.  There are many reasons for this.  We are constantly reminded that our focus must be on meeting customer needs and increasing store sales. Moreover, we are told to schedule ourselves for 32 hours of floor coverage, in order to meet labor cost requirements, which is reflective of the importance of the barista duties we perform.  That is, we do not simply fill in when it gets busy; rather, we schedule ourselves ahead of time for 80% floor coverage.  The reason for this is very simple.  When Store Managers work as baristas (performing non-exempt customer service-related duties), this does not count against the pre-determined maximum labor budget for the store, and therefore does not affect the "bottom line."

(Parker Decl. ¶ 16; Mazzarino Decl. ¶ 16.)  Plaintiffs likewise state that store managers do very little "supervision" because they are "too busy" with their duties as baristas.  (Parker Decl. ¶ 9,

Mazzarino Decl. ¶ 9.)  Finally, Plaintiffs argue that managerial duties are ancillary to their non-exempt work because "many of those duties are performed by non-exempt employees."  (Pl. Mot. 22.)  For instance, assistant store managers "support the store manager" in supervising the staff, and assistant managers and shift supervisors may change out cash drawers and make bank deposits as necessary.  (Pl. Mot. 22; Parker Decl. ¶ 17; Mazzarino Decl. ¶ 17.)  Plaintiffs claim this evidence is "overwhelming and undisputed" that store managers' managerial duties are of little importance relative to their non-exempt work.

In opposition, Defendant presents the statement of Jeffrey Peters.  As the Court has already noted, Peters declaration directly conflicts with Mazzarino's statement that barista duties were the "primary duties" of the store managers.  Peters declared that "Mazzarino's most important task was to manage his partners and the operations of his store." (Peters Decl. ¶ 7.) Peters stated that any assertion suggesting that barista duties were primary to those management tasks was "inaccurate."  (*Id.*)  Peters further explained that Mazzarino was "able to coach and supervise" partners while serving customers at the same time and that Mazzarino remained the authority to direct any store employee at any time regardless of who served as shift supervisor. (Peters Decl. ¶¶ 9, 13.)  These assertions squarely conflict with the assertions made by Mazzarino in his declaration and create a question of fact as to which duties of the store manager were more important to the enterprise.  While it is true that "[w]hether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities," *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 61 (D. Conn. 1997), an employee's characterization of his or her responsibilities should not be dispositive when that characterization conflicts with other evidence.  Thus, the Court cannot conclude as a matter of

law that Plaintiffs' management duties were less important than their non-exempt duties.[9]

**Exercise of Discretion, Freedom from Supervision**

Similarly, the evidence presented by Plaintiffs and Defendant conflicts regarding the amount of discretion exercised by store managers and their freedom from supervision. Plaintiff relies heavily on the Defendant's brief presented to the NLRB. For instance, Plaintiff cites a passage where Defendant stated that the district managers manage the "overall operations" of the stores in the district, thus suggesting that store managers do not exercise any discretion as managers. (Pl. Mot. 23.) Plaintiffs argue the following: district managers visit stores regularly and set store goals and monitor operations (Pl. Mot. 23); district managers, not store managers, coordinate purchasing, inventory supply, advertising, pricing, and facility maintenance (Pl. Mot. 24); district managers make decisions regarding promotions and terminations (Pl. Mot. 24); district managers review performance evaluations written by store managers (Pl. Mot. 25); and finally that all store manager decisions may be overturned by district managers (Pl. Mot. 25-26).

However, Defendant stated in the NLRB brief that the "store manager is responsible for supervising and directing the partners in the store, implementing Company initiatives, ensuring

---

[9]Plainitffs rely heavily on a district court case from the Middle District of Tennessee, *Cowan v. Treetop Enters., Inc.*, 120 F. Supp. 2d 672 (M.D. Tenn. 1999). In that case involving Waffle House franchises, the court was presented with evidence in the form of corporate documents that stated a unit manager's "primary objective" was to become a "proficient grill operator," and any management duties were secondary to a manager's cooking responsibilities. Other evidence indicated that managers could not supervise employees while acting as "grill operators." *Id*. at 691. Based on the evidence, the court found that the manager's "critical function" was cooking, not supervision. *Id.* at 691-92. In the instant case, however, Plaintiffs have not produced uncontroverted evidence that store managers could not supervise employees while providing customer service as baristas, nor have Plaintiffs produced undisputed evidence that the primary objective of a manager was to act as a barista. A question of fact exists as to both of these issues. As such, *Cowan* is of limited assistance to Plaintiffs.

customer satisfaction and product quality, and managing safety and security. The store manager also plays a role in hiring, training, evaluating, and disciplining partners." (Pl. Ex. 1 at 7.) Further, Defendant also stated in the brief all of the following: store managers interview applicants (though they may not interview applicants for their particular store) (Pl. Ex. 1 at 8); store managers have no authority to vary company policy regarding safety, but they are required to educate and inform store employees regarding safety policy (Pl. Ex. 1 at 12); store managers prepare written evaluations for store employees (Pl. Ex. 1 at 12); store managers make recommendations regarding promotions (Pl. Ex. 1 at 14); and store managers issue disciplinary citations to employees who violate company policy and can recommend an employee for discharge (Pl. Ex. 1 at 15). Thus, the representations in the NLRB brief are, at best, inconclusive as to the level of managerial authority exercised by store managers.

The waters are further muddied by the Peters, Mazzarino, and Parker declarations. Parker and Mazzarino both stated that they "rarely if ever had the ability to exercise true discretionary power in connection with matters of significance." (Parker Decl. ¶ 18; Mazzarino Decl. ¶ 18.) Parker and Mazzarino explained that they "simply followed Starbucks' policies" and referred all "management" issues to the district manager. (*Id.*) They further explained that the district manager mandated when all "management" tasks must be completed and that the district managers would visit the stores up to five or ten times per month. (Parker Decl. ¶¶ 18-19; Mazzarino Decl. ¶¶ 18-19.)

In contrast, Peters declared that Mazzarino was responsible for ordering products and supplies for the store. (Peters Decl. ¶ 20.) Peters stated that he was "not in constant communication with Mazzarino" and that he visited Mazzarino's store approximately twice per

month.  (Peters Decl. ¶ 21.)  Peters also explained that he "rarely communicated with Mazzarino" and that he estimated they communicated "once or twice a week" via e-mail.  (Peters Decl. ¶ 22.)  According to Peters, Mazzarino had primary responsibility for drafting employee evaluations, making promotion recommendations, and for addressing customer complaints.  (Peters Decl. ¶¶ 17-18.)  Mazzarino further had primary responsibility for allocating work between partners assigned to a given shift.  (Peters Decl. ¶ 19.)

The fact that store managers' discretion might be circumscribed by corporate policy is unavailing.  *See Donovan v. Burger King Corp.* 675 F.2d 516, 521-22 (2d Cir. 1982) ("The exercise of discretion, however, even where circumscribed by prior instruction, is as critical to that success as adherence to 'the book.' [Defendant], of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made.").  Further, the fact that store managers report to district managers does not mean, as a matter of law, that store managers do not have management as a primary duty.  *See Murray v. Stuckey's Inc.*, 939 F.2d 614 (8th Cir. 1991).  As the *Stuckey's* court explained,

> [W]e do not believe that the local store manager's job is any less managerial for FLSA purposes simply because he or she has an active regional manager boss.  Like other courts that have considered the question, we believe that the manager of a local store in a modern multi-store organization has management as his or her primary duty even though the discretion usually associated with management may be limited by the company's desire for standardization and uniformity.

*Id.* at 619.[10]  The mere fact that managers are constrained by corporate policy and have their

---

[10]Plaintiffs try to distinguish *Stuckey's* by arguing that the plaintiffs in that case had the authority to hire and fire other employees.  (Pl. Reply 17.)  The authority to hire or fire employees or make recommendations of "particular weight" is one of the four factors the Court must consider in determining whether an employee is exempt from the requirements of the FLSA for activities since August 2004.  *See* 29 C.F.R. § 541.100(a).  While Defendant does not dispute

decisions reviewed by superiors does not diminish the primacy of their managerial responsibilities. Taking the evidence in the light most favorable to Defendant, the Court concludes that questions of fact exist as to the Plaintiffs freedom from supervision and ability to exercise discretion.

**Relationship Between Salaries**

The final factor involves a comparison of Plaintiffs' salaries with the wages paid to other non-exempt employees. Both Parker and Mazzarino stated that their "overall compensation was substantially similar, if not worse, than the non-exempt Assistant Store Managers." (Parker Decl. ¶ 20; Mazzarino Decl. ¶ 20.) This assertion appears to be based on the fact that non-exempt employees were eligible for overtime compensation: "Stated another way, if the baristas and shift supervisors worked the number of hours I did, and considering the fact that they are eligible for overtime, they would make as much if not more than me." (*Id.*)

Plaintiffs own proffered evidence, however, suggests a different conclusion. Plaintiffs have submitted the "average weekly compensation" for Lezli Parker, which ranged from $788.46 to $806.16 per week. (*See* Pl. Ex. 6.) In contrast, the average weekly compensation for Parker's assistant store manager in late 2001 was $567.31 per week, and the average weekly compensation for Parker's shift supervisors from 2001 to 2003 ranged from $403.69 to $439.97 per week. Similar disparities are evident with respect to Ronald Mazzarino. Mazzarino earned an average weekly salary of $881.33 from 2001 to 2003. Mazzarino's assistant manager earned

---

that Plaintiffs did not have the authority to terminate employees unilaterally (*see* Def. Resp. 23), Defendant has pointed to evidence suggesting that Plaintiffs recommendations were given "great weight." (Peters Decl. ¶ 23; *see also* Pl. Ex. 1 at 15.) Again, Defendant has presented evidence raising a question of fact as to what weight Plaintiffs' recommendations regarding hiring and firing subordinate employees, precluding an entry of summary judgment in favor of Plaintiffs.

average weekly wages of $617.02 for the same period, and the shift supervisors earned average weekly wages of roughly $417.66 for the same period.  Despite Plaintiffs' contentions to the contrary, the evidence suggests that Plaintiffs received greater compensation than non-exempt employees.  Further, Plaintiffs were eligible for an annual bonus, which was not available to other employees.   (Parker Decl. ¶ 20; Mazzarino Decl. ¶ 20.)  Bonuses are "common for executive employees in the corporate world," and they are a hallmark of executive compensation.  *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 869 (N.D. Tex 2001); *see also Mims v. Starbucks Corp.*, No. H-05-0791, 2007 WL 10369 at *8 (S.D. Tex. Jan. 2, 2007).

Plaintiffs contend that the Court should not merely compare the average weekly compensation rates; instead, the Court should compare average hourly compensation based on the number of hours each category of employee worked in a given week.  Plaintiffs claim that they worked well over forty hours per week, so on an hourly basis, their salaries are comparable to those of other employees.  The Court will not engage in this analysis.  First, Courts are loathe to engage in this sort of "mathematical gymnastics" when comparing wages to salaries.  *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1279 (S.D. Fla. 2004); *see also Mims,* No. H-05-0791, 2007 WL 10369 at *8; *Haines*, 939 F. Supp. at 451.[11]  Additionally, Plaintiffs have provided no record evidence of the number of hours worked each week by store managers by

---

[11]Plaintiffs cite only one case in support of their method of calculation – an unpublished opinion from the Fourth Circuit, *Jones v. Virginia Oil Co.*, 69 Fed. Appx. 633 (4th Cir. 2003).  In that case, the Court multiplied the hourly wages of non-exempt employees by the number of hours the purported exempt employee worked each week.  *Id.* at 638-39.  However, contrary to Plaintiffs' assertion that this method is the "appropriate method" for comparison, the Court finds this method entirely too speculative.  Instead, in line with virtually all other courts, the Court will compare the actual wages earned by non-exempt employees with the actual salary paid to Plaintiffs.  *See, e.g., Posely*, 433 F. Supp. 2d at 1304-05.  The fact that other employees *could* have been paid more does not mean that they were, in fact, provided greater compensation.

which the Court could make this sort of calculation. Parker and Mazzarino both stated that they worked "on average" approximately 55 to 60 hours each week. (Parker Decl. ¶ 25; Mazzarino Decl. ¶ 25.) This rough assertion, however, is insufficient to allow the Court to make a meaningful comparison of the relative compensation levels. Finally, even if the Court were to engage in an hourly wage versus hourly salary analysis, because of Plaintiffs' eligibility for an annual bonus, the Court would still not be able to draw any conclusions regarding this factor as a matter of law because no bonus data has been provided. *See, e.g., Thomas v. Speedway Superamerica, LLC*, No. 1:04-CV-00147, 2006 WL 4969500 at *12 (S.D. Ohio Mar. 31, 2006).

In evaluating the factors for determining Plaintiffs' "primary duties," lingering questions of fact remain. Accordingly, Plaintiffs' motion for summary judgment as to the executive exemption must be denied.

**Administrative Exemption**

Plaintiffs also devote a section of their motion to the administrative exemption to the FLSA's coverage. The Department of Labor regulations define an "employee employed in a bona fide administrative capacity" as an employee:

(1) who is compensated on a salary basis at a rate of at least $455 per week;

(2) whose primary duty is the performance of office or non-manual work directly related to the management of the employer or the business's customers; and

(3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). As with the executive exemption, the "salary basis" prong is not in dispute. The parties only dispute the second two prongs, regarding the Plaintiffs "primary

duties" and whether those duties include the "exercise of discretion."

The term "primary duty" under this exemption carries the same definition that it does for the executive exemption. *See* 29 C.F.R. § 541.700. The regulations list examples of "work directly related to management or general business operations," including purchasing, safety and health, personnel management, legal and regulatory compliance, and quality control. 29 C.F.R. § 541.201. Thus, the Court must engage in an inquiry similar to the one conducted for the executive exemption as to whether the store managers' "primary duty" involved management tasks. For the same reasons already cited for the executive exemption, the Court concludes that Defendant has proffered evidence creating a question of fact as to whether Plaintiffs' primary duties were managerial.

Similarly, the Court cannot conclude as a matter of law that Plaintiffs' primary duties did not include the exercise of discretion and independent judgment. As has been discussed with respect to the executive exemption, a question of fact exists regarding the level of discretion Defendant accorded store managers. Furthermore, the mere fact that Plaintiffs decisions and recommendations could be reviewed and rejected by district managers does not mean that Plaintiffs had no ability to exercise discretion. *See* 29 C.F.R. § 541.202(c) ("However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review."). Thus, a question of fact remains as to the amount of discretion Plaintiffs exercised in the course of their employment. As such, summary judgment must be denied with respect to the administrative exemption as well.

**Conclusion**

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Partial Summary Judgment on Defendant's Claimed Exemptions as to Store Managers in Defendant's Downtown New York City Region (DE 330) is **DENIED**.

2. Plaintiffs' Motion for Judicial Estoppel and to Strike (DE 413) is **DENIED**.

3. Defendant's Motion to Deny Plaintiffs' Motion for Summary Judgment or for Other Relief Pursuant to Fed. R. Civ. P. 56(f) (DE 379) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 12th day of March, 2008.

_____
KENNETH A. MARRA
United States District Judge